[Cite as *State v. Lewis*, 2016-Ohio-7002.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, P. J.<br>Hon. William B. Hoffman, J. |
| -vs- | |
| | Case No. 15 CA 106 |
| CHRISTOPHER LEWIS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No. 15 CR 619


JUDGMENT:     Affirmed in Part; Reversed in Part
and Remanded


DATE OF JUDGMENT ENTRY:     September 26, 2016


APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

BAMBI COUCH PAGE     RANDALL E. FRY
PROSECUTING ATTORNEY     10 West Newson Place
DANIEL M. ROGERS     Mansfield, Ohio  44902
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1}    Defendant-Appellant Christopher Lewis appeals from his convictions, in the Court of Common Pleas, Richland County, on multiple felony counts, including aggravated robbery and kidnapping. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

{¶2}    On April 29, 2015, at about 5:00 AM, appellant was driven by an accomplice to a residence in Bellville, Ohio. Using the ruse of needing water for the car's radiator, appellant and his accomplice forcibly entered the home and proceeded to repeatedly assault the owner, 57-year-old Richard Pritchard, restrain him with duct tape, and steal a number of items from the residence, including firearms, ammunition, antique coins, two televisions, and a credit card. Pritchard initially tried to defend himself and his home by reaching for his loaded pistol, but appellant wrested it from his control. Appellant further repeatedly kicked at appellant's German Shepherd, Dusty, when she tried to defend Pritchard. Appellant and his accomplice eventually departed with the stolen items, leaving Pritchard on the couch, bound and blindfolded with duct tape. Fortunately, Pritchard's friend Tom Schwartz discovered him at about 7:15 AM.

{¶3}    On August 11, 2015, the Richland County Grand Jury indicted appellant on twenty-one criminal counts based on the aforesaid events. Most of the counts utilized "aiding and abetting" language.

{¶4}    Count 1 of said indictment charged appellant with felonious assault, a second-degree felony (R.C. 2903.11(A)(1)). Count 2 charged appellant with aggravated burglary, a first-degree felony (R.C. 2911.11(A)(1)). Count 3 charged appellant with aggravated robbery, a first-degree felony (R.C. 2911.01(A)(1)). Count 4 charged

appellant with kidnapping, a first-degree felony (R.C. 2905.01(A)(2)). Counts 5 through 18 each charged appellant with grand theft, third-degree felonies (R.C. 2913.02(A)(1) and (B)(4)). Counts 19 and 20 both charged appellant with theft, each a fifth-degree felony (R.C. 2913.02(A)(1)). Count 21 charged appellant with illegal possession of drug abuse instruments, a second-degree misdemeanor (R.C. 2925.12(A)).

{¶5} In addition, Counts 1-4 all included firearm specifications pursuant to R.C. 2941.145.

{¶6} Appellant was arraigned on August 18, 2015, at which time he pled not guilty to all counts and specifications.

{¶7} Following at least two continuances at the request of appellant, the matter came on for a jury trial on October 29, 2015. After the State presented its case, appellant presented testimony from himself and one other defense witness.

{¶8} On November 3, 2015, the jury found appellant guilty on all counts and specifications.

{¶9} On November 10, 2015, following a separate sentencing hearing, the trial court sentenced appellant to prison terms of five years on Count 1 (felonious assault), ten years on Count 2 (aggravated burglary), nine years on Count 3 (aggravated robbery), nine years on Count 4 (kidnapping), three years on merged Count 5 (grand theft, with Count 5 merged with the remaining counts of grand theft on 6 through 16), six months each on Counts 19 and 20 (theft, felonies of the fifth degree), one month on Count 21 (possession of drug abuse instruments), and three years on the firearm specification attached to Counts 1 through 4. Counts 17 and 18 were designated "not tried." The court ordered the sentences on Counts 1 and 2 and the combined firearm specification would

be served consecutively to each other and concurrently with the sentences on the remaining counts, for a total prison term of eighteen years. The court also imposed five years of mandatory post-release control.

{¶10} On November 13, 2015, the trial court issued an order granting appellant 149 days of jail time credit.

{¶11} On December 8, 2015, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

{¶12} "I.  THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT SEPARATELY FOR ALLIED OFFENSES OF SIMILAR IMPORT.

{¶13} "II.  THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF A WITNESS OVER THE OBJECTION OF THE APPELLANT'S COUNSEL."

I.

{¶14} In his First Assignment of Error, appellant argues, based on a theory of allied offenses of similar import, that the trial court erred in not merging all of his sentences into one. We agree in part and disagree in part.

{¶15} R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions. *See State v. Jackson,* 2nd Dist. Montgomery No. 24430, 2012–Ohio–2335, ¶ 133, citing *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio–6314, ¶ 45. Appellate review of an allied offense question is de novo. *State v. Williams,* 134 Ohio St.3d 482, 2012–Ohio–5699, ¶ 12.

{¶16} R.C. 2941.25 states as follows:

{¶17} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶18} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶19} For approximately the first decade of this century, law interpreting R.C. 2941.25 was based on *State v. Rance,* 85 Ohio St.3d 632, 636, 1999–Ohio–291, wherein the Ohio Supreme Court had held that offenses are of similar import if the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* The *Rance* court further held that courts should compare the statutory elements in the abstract. *Id.*

{¶20} In 2010, the Ohio Supreme Court, in *State v. Johnson, supra,* specifically overruled the 1999 *Rance* decision. The Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus.

{¶21} Recently, however, the Ohio Supreme Court indicated that "more recent decisions of this court have rendered the analysis of the *Johnson* lead opinion largely obsolete." *State v. Earley*, 145 Ohio St.3d 281, 285, 2015-Ohio-4615, ¶ 11. We now apply a three-part test under R.C. 2941.25 to determine whether a defendant can be convicted of multiple offenses: "(1) Were the offenses dissimilar in import or significance?

(2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶ 12, citing *State v. Ruff,* 143 N.E.3d 114, 2015–Ohio–995, ¶ 31. We also note in *Ruff*, the Court further developed the analytical framework for courts to apply regarding the concept of "import," holding in part as follows: "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff,* at paragraph two of the syllabus.

**{¶22}** We finally note the Supreme Court of Ohio has also stated that "[t]he imposition of concurrent sentences is not the equivalent of merging allied offenses." *State v. Damron,* 129 Ohio St.3d 86, 2011–Ohio–2268, ¶ 17.

**{¶23}** We thus proceed to an allied offense analysis of the offenses at issue in the case *sub judice.*[1]

### Theft and Grand Theft with Aggravated Robbery / Aggravated Burglary

**{¶24}** As noted in our earlier recitations, the trial court merged the counts of grand theft together (Counts 5 through 16), while the two F-5 theft counts (Counts 19 and 20) were made concurrent. Appellant presently urges that these theft and grand theft counts should additionally have been merged with his aggravated robbery and/or aggravated burglary counts.

---

[1] We will herein direct our analysis to the points specifically raised in appellant's brief. *See State v. Trammell*, 5th Dist. Stark No. 2015 CA 00151, 2016-Ohio-1317, ¶ 15, citing *Sisson v. Ohio Department of Human Services,* 9th Dist. Medina No. 2949–M, 2000 WL 422396.

**{¶25}** In regard to aggravated robbery, we note appellant was convicted of violating R.C. 2911.01(A)(1), which states in pertinent part that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall *** [h]ave a deadly weapon on or about the offender's person or under the offender's control. * * *" Appellant's theft convictions were all based on R.C. 2913.02(A)(1), which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."

**{¶26}** We have previously held, under a *Johnson* analysis, that a sentencing court should have merged a defendant's robbery and theft convictions, where both offenses stemmed from appellant's shoplifting of the same items. *See State v. Jones*, 5th Dist. Licking No. 10 CA 50, 2011-Ohio-2306, ¶ 30. We find no grounds to herein deviate from such rationale, even under a *Ruff* analysis. For example, in *State v. Skapik*, 2nd Dist. Champaign No. 2015-CA-5, 2015-Ohio-4404, a defendant had stolen several items from a law enforcement officer's personal vehicle. The Second District Court held: "In our view, this conduct constituted a single offense committed with a single animus resulting in a single harm against a single victim. This is not a case involving multiple theft offenses committed separately. Nor does it involve a single act of theft committed against multiple victims. Consistent with *Ruff, supra*, we conclude that Skapik may be convicted and sentenced for only one theft offense in connection with the items he stole from the deputy sheriff's vehicle." *Id.* at ¶ 13.

**{¶27}** Thus, we presently find *Ruff* does not require that we herein treat the theft of separate items from the same situs as separate and identifiable offenses, and under

the circumstances of the case *sub judice*, the merged grand theft offenses should have again been merged with the count of aggravated robbery occurring during the home invasion, even assuming *arguendo* that appellant's original primary goal was to just steal drugs from Pritchard. In so holding, we additionally conclude the two F-5 theft counts (Counts 19 and 20) should likewise be part of said merger.

**{¶28}** However, we reach a different conclusion in regard to aggravated burglary, in light of the recent case of *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543. In that case, the Eighth District recognized that "*** it is the intent to commit any criminal offense while trespassing that constitutes the commission of the burglary crime" and that "*** no criminal offense actually needs to be committed to support the burglary charge." *Id.* at ¶ 5 (internal citations omitted). The court then determined, citing a Fifth District opinion: "Even if the criminal offense is actually committed, the burglary was already completed and the subsequent crimes were then committed with separate conduct." *Id.*, citing *State v. Huhn,* 5th Dist. Perry No. 15–CA–00006, 2015–Ohio–4929, ¶ 22. Accordingly, we find no merit in the case *sub judice* in appellant's argument that the merged theft offenses should have been merged with the count of aggravated burglary.

### *Aggravated Robbery with Aggravated Burglary*

**{¶29}** Appellant next urges that his aggravated robbery and aggravated burglary counts should have been merged.

**{¶30}** We have recognized that "[a] citizen has an assurance of personal security in one's home, an assurance that has become part of our constitutional tradition. *** Thus, the aggravated burglary statute recognizes that an armed robbery occurring within

the sanctity of one's home deserves to be treated more severely than a robbery that occurs on a street corner." *State v. Howard*, 5th Dist. Stark No. 2012CA00061, 2013-Ohio-2884, ¶ 58, in part citing *Minnesota v. Carter,* 525 U.S. 83, 100, 119 S.Ct. 469, 142 L.Ed.2d 373 (1978). We went on to determine in *Howard* that the defendant's act of entering the basement of an apartment was separate and distinct from the subsequent aggravated robbery that took place inside, explaining that "[t]he crime of aggravated burglary was completed when the perpetrators broke the window and entered into the basement of the residence with purpose to commit a theft offense." *Id.* at ¶ 60.

**{¶31}** Upon review, we find our reasoning on this point in *Howard* has since been fully buttressed by the Ohio Supreme Court's subsequent holding in *Ruff.* Thus, we hold that the harm that results from an aggravated burglary is indeed "separate and identifiable" in relation to an aggravated robbery that follows inside a victim's home.

*Kidnapping with Aggravated Robbery / Aggravated Burglary*

**{¶32}** Appellant next maintains that his kidnapping count should have been merged with his aggravated robbery and/or aggravated burglary counts.

**{¶33}** Appellant was convicted of kidnapping under R.C. 2905.01(A)(2), which states that "[n]o person, by force, threat, or deception, shall *** restrain the liberty of (another) person *** to facilitate the commission of any felony or flight thereafter."

**{¶34}** Upon review, we concur with the State's assessment in response that appellant completed the offense of kidnapping when he and his accomplice bound Pritchard's hands, feet, and eyes with duct tape for the purpose of stealing from him. *See* Tr. at 148, 149, 308-310. Thus, we find appellant's restraint of the victim via binding was

an act separate and distinct from the acts needed to complete the offenses of aggravated robbery and aggravated burglary, and merger is not warranted in this regard.

*Felonious Assault with Aggravated Robbery / Aggravated Burglary*

{¶35} Appellant lastly contends his felonious assault conviction should have been merged with his aggravated robbery and/or aggravated burglary counts.

{¶36} In regard to aggravated robbery, we again note that appellant in this instance was convicted of violating R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Clearly, a person could conceivably violate R.C. 2911.01(A)(1) without ever actually utilizing or engaging his or her deadly weapon. In the present case, appellant did in fact put the gun to the victim's head, and further beat him repeatedly with his fists. But these additional acts went beyond the act of aggravated robbery, as that offense occurred as soon as appellant took control of the gun from appellant as a means to steal from him. As such, we find a separate and identifiable harm to the victim from the felonious assault versus the aggravated robbery. *Ruff*, *supra*.

{¶37} In regard to aggravated burglary, a similar result is warranted, as appellant committed the crime of aggravated burglary the instant he and his accomplice forced their way into Pritchard's home, and the subsequent violent acts against Pritchard were a separate form of harm. Therefore, merger would have been improper in this context.

*Conclusion*

**{¶38}** Appellant's First Assignment of Error is therefore overruled in part and sustained in part, to the extent that all of the grand theft and theft counts should have been merged for sentencing, and that said grand theft and theft counts should further have been merged with the count of aggravated robbery.

II.

**{¶39}** In his Second Assignment of Error, appellant contends the trial court erred in admitting certain testimony from a second Ohio BCI scientist. We disagree.

**{¶40}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case *sub judice*, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman,* 5th Dist. Stark No. 1999CA00027, 2000 WL 222190.

**{¶41}** In Ohio, opinion and expert testimony is generally governed by Article VII of the Rules of Evidence. Furthermore, Crim.R. 16(K) states as follows: "An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, *which period may be modified by the court for good cause shown*, which does not prejudice any other party.

Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." (Emphasis added).

**{¶42}** In the case *sub judice*, the State presented evidence in the form of DNA analysis of duct tape pieces and a plastic container cap secured at the crime scene. In this vein, the State first called Stacy Violi, a forensic scientist for BCI, who was qualified as an expert witness without objection. Tr. at 196. Violi testified that she was the analyst assigned to the case at hand, and that she had "interpreted DNA profiles and wrote reports." Tr. at 200. At the end of the first day of the trial, after several more witnesses had testified, the trial court conducted a sidebar with the attorneys, outside the jurors' presence. Tr. at 258-262. At that time, the trial court expressed some reservations on the issue of the proof of chain of custody, stating as follows to the prosecutor: "It seems to me that part of the chain of custody is whoever made the swab. So that's what I'm telling you. You can either come up with some law that convinces me to the contrary, or that person is going to have to be there if [defense counsel] is insisting on an intact chain of custody." Tr. at 260.

**{¶43}** Therefore, the next day, the State called Brittany Farinochi, also a BCI forensic scientist, over appellant's objections. Farinochi, who was not on the State's witness list, testified *inter alia* that she had performed the DNA testing prior to passing the items on to Ms. Violi. *See* Tr. at 292-296.

**{¶44}** As an initial matter, we note appellant's objection to Farinochi was technically based on her absence from the witness list, not that Crim.R. 16(K) was at issue. *See* Tr. at 290. Nonetheless, we recognize that in demonstrating a chain of custody, "[t]he proponent of the evidence need not offer conclusive evidence as a

foundation but must offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." *State v. Harold*, 11th Dist. Portage No. 2014-P-0012, 2015-Ohio-954, ¶ 37, citing *State v. Ewing,* 9th Dist. Lorain No. 97CA006944, 1999 WL 241610. Accordingly, upon review, we find the State had no reasonable cause to believe prior to trial that Farinochi's testimony would be necessary to establish chain of custody. Furthermore, we find appellant suffered no prejudice as a result of her testimony, as the State would have sufficiently established its chain of custody regardless of her testimony, and any issues with chain of custody would have only impacted the weight of the DNA evidence, not its admissibility. *See Harold, supra*; *State v. Semedo, 5*th Dist. Stark No. 2006 CA 00108, 2007-Ohio-1805, ¶ 12.

**{¶45}** Upon review, we conclude the allowance of Farinochi's testimony absent a timely Crim.R. 16(K) formal report was harmless beyond a reasonable doubt, and the trial court did not abuse its discretion in permitting her testimony.

**{¶46}** Appellant's Second Assignment of Error is therefore overruled.

**{¶47}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed in part, reversed in part, and remanded for purposes of merger for sentencing.

By: Wise, J.

Farmer, P. J., concurs.

Hoffman, J., concurs separately.

JWW/d 0825

*Hoffman, J., concurring*

{¶48} I concur in the majority's analysis and disposition of Appellant's first assignment of error.

{¶49} I further concur in the majority's disposition of Appellant's second assignment of error.

{¶50} I find the majority's citation to *State v. Sage,* supra, although accurate, unnecessary and potentially misleading. *Sage* involved the admission or exclusion of **relevant** evidence. There is no dispute in the case sub judice Farinochi's testimony was relevant to establishing the chain of custody.

{¶51} Although Appellant has argued in his brief Farinochi's testimony was erroneously admitted under Crim.R. 16(K), such argument is misplaced. The record demonstrates Appellant specifically agreed to Farinochi's qualification as an expert and Farinochi did not prepare a report. Tr. at 292. Farinochi was only involved in the collection of the DNA sample, not its testing or analysis. As noted by the majority, Appellant's only stated objection was Farinochi was not on the state's witness list. See Crim.R. 16(I).

{¶52} The appropriate sanction to be imposed for a discovery violation is left to the discretion of the trial court. See Crim.R. 16(L). *State v. Opp*, 3rd Dist. 13-13-33, 2014-Ohio-1138.

{¶53} Given it was the trial court who raised, sua sponte, its concern over the chain of custody, I agree with the majority the trial court did not abuse its discretion in allowing Farinochi to testify. I note Appellant did not seek a continuance and Farinochi's appearance as a witness was not a surprise since the trial court raised the issue the day

before she appeared to testify and Appellant was aware the testimony concerned the

collection of the DNA swab.

> **{¶54}** Having so found, I find any analysis of prejudice unnecessary.[2]

---

[2] I find the majority's application of a "harmless beyond a reasonable doubt" analysis overly restrictive. Such standard clearly applies to analysis of the effect of constitutional errors and, pursuant to *State v. Morris*, (2014) 141 Ohio St.3d 399, 2014-Ohio-5052, the erroneous admission of evidence. I would not apply it to violations of non-constitutional procedural errors.