[Cite as *State v. Evans*, 2020-Ohio-3968.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108648 |
| v. | : | |
| LESLIE EVANS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** August 6, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636193-B

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Megan Helton and Eben McNair, Assistant
Prosecuting Attorneys, *for appellee*.

Joseph V. Pagano, *for appellant*.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant, Leslie Evans ("Evans"), appeals from his convictions and sentence following a jury trial. He raises the following assignments of error for review:

1.  The trial court erred by failing to grant defense counsel's motion to sever Counts 18, 19, and 20 from the unrelated charges for the three alleged robberies.

2.  Evans's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal.

3.  The convictions were against the manifest weight of the evidence.

4.  The trial court erred by admitting evidence in violation of Evid.R. 403 and 404(B).

5.  The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated Evans's state and federal rights to due process and protections against double jeopardy.

6.  Evans's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

{¶ 2}  After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for a limited resentencing hearing.

## I.  Procedural and Factual History

{¶ 3}  In January 2019, Evans and his codefendants, David Stewart ("Stewart") and Tisean Young ("Young"), were named in a 21-count indictment. Evans was charged with five counts of aggravated robbery in violation of R.C. 2911.01(A)(1), with one- and three-year firearm specifications (Counts 1, 3, 5, 9, and 12); four counts of theft in violation of R.C. 2913.02(A)(1) (Counts 8, 11, 14, and 15); three counts of robbery in violation of R.C. 2911.02(A)(2), with one- and three-year firearm specifications (Counts 6, 10, and 13); two counts of petty theft in violation of R.C. 2913.02(A)(1) (Counts 2 and 4); two counts of tampering with evidence in violation of R.C. 2921.12(A)(1) (COunts 16 and 20); and single counts of felonious

assault in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications (Count 7); having weapons while under disability in violation of R.C. 2923.13(A)(2), with a forfeiture specification (Count 18); carrying a concealed weapon in violation of R.C. 2923.12(A)(2), with a forfeiture specification (Count 19); and receiving stolen property in violation of R.C. 2913.51(A) (Count 21).

{¶ 4} The indictment stemmed from allegations that Evans participated in a series of aggravated robberies that occurred at a Dollar General store on September 3, 2018 (the "Dollar General robbery"), a Family Dollar store on September 30, 2018 (the "Family Dollar robbery"), and a CVS store on October 4, 2018 (the "CVS robbery"). The matter proceeded to a jury trial in April 2019, where the following relevant evidence was adduced.

{¶ 5} On October 4, 2018, two male suspects entered a CVS store located in Cleveland, Ohio. Theresa Daniels ("Daniels") testified that she and her daughter, D.B., were shopping in the CVS when one of the suspects, who was wearing a black-hooded sweatshirt, forced the store customers to the back of the store to keep them contained in one area. The suspect ordered D.B. to give him the two cell phones that were in her possession. The suspect also threatened to shoot Daniels and D.B. if they looked at him. D.B. testified that she "thought she was going to die, he was going to kill us or something." (Tr. 363.)

{¶ 6} As the suspect in the black-hooded sweatshirt contained the store customers, the second suspect, later identified as Evans, approached CVS store employees with a brandished firearm. CVS store pharmacist, Michael Daloisio

("Daloisio"), testified that the second suspect, who was wearing a green-hooded sweatshirt, ordered him at gunpoint to open the narcotics safe in the pharmacy area. Daloisio testified that he informed the suspect that he did not have the ability to open the safe because it was on a timed lock. Daloisio stated that the suspect began yelling at him and suddenly "smacked [him] with the gun." (Tr. 515.) Daloisio fell to the ground and was bleeding from his head. The suspect also took possession of Daloisio's wallet and cell phone. Daloisio testified that his wallet contained his driver's license, credit cards, gift cards, a key to his vehicle, and a key to his home. During the subsequent police investigation, it was later learned that the suspect in the green-hooded sweatshirt also took a cell phone from the store's security guard, Samuel Watkins ("Watkins").

{¶ 7} Detective Timothy Cramer ("Det. Cramer"), of the Cleveland Police Department, responded to the CVS store as the robbery was ongoing. By the time Det. Cramer and other responding officers entered the store, however, the two suspects had successfully fled the scene without apprehension. Det. Cramer testified that once the store was cleared, he spoke with the victims and recovered video footage from the store's surveillance camera system. The video footage was played for the jury throughout Det. Cramer's direct examination.

{¶ 8} On October 9, 2018, Detective Glenn Detrick ("Det. Detrick"), of the Cleveland Police Department, was patrolling a known crime area, when his partner "observed a male, showing characteristics of an armed male standing in [a] driveway." (Tr. 439.) Det. Detrick explained that he believed the male was armed

because he was walking with "his hand down by his waist." (Tr. *id.*) When Det. Detrick "shined [a] light on the male," the male changed his course of direction and walked behind nearby bushes. When the male was eventually detained for further investigation, a loaded firearm was located in the bushes where the detectives had "lost sight of the male." (Tr. 440.) The male, later identified as Evans, was arrested, and his cell phone was confiscated. Evans's involvement in the CVS robbery was not known by the detectives at the time of his arrest.

{¶ 9} In the course of the investigation into the CVS robbery, Cleveland police detectives were able to track purchases made, or attempted to be made, with Daloisio's stolen credit cards. Detective Lisette Gonzalez ("Det. Gonzalez"), of the Cleveland Police Department, testified that a purchase in excess of $400 was attempted at a gun store by "an individual by the name of David Stewart." In addition, an attempted purchase was declined at an online clothing store. However, a stolen credit card was successfully used to purchase food at a fast-food restaurant.

{¶ 10} Det. Gonzales testified that investigators reviewed surveillance footage from the fast-food restaurant, and identified the vehicle that was used to purchase food with Daloisio's stolen credit card. The vehicle was registered to Evans's mother, Latisha Edwards. Det. Gonzalez testified that she entered Edwards's name into the Cuyahoga County juvenile database and learned that Evans was her son. Upon further investigation, Det. Gonzalez discovered that Evans had been arrested by the gang-impact unit on October 9, 2018, and was wearing a green-hooded sweatshirt at the time of his detention. Det. Gonzales explained that this

was significant because the clothing worn by Evans at the time of his arrest "matched the same clothing that was worn during [other] aggravated robberies within the Fourth District." (Tr. 467.)

{¶ 11} On November 7, 2018, a search warrant was executed at Evans's home, where he lived with his mother and her boyfriend, codefendant Stewart. During the search, the detectives located ammunition, Daloisio's wallet, an ATM bank card belonging to Daloisio, credit cards belonging to Daloisio, an unidentified key, Watkins's social security card, Watkins's Medicare card, credit cards belonging to Watkins, a black-hooded sweatshirt that matched the clothing worn by the one of the suspects during the CVS robbery, and a green-hooded sweatshirt that matched the clothing worn by the second suspect during the CVS robbery. (Tr. 491-492.) In addition, certain items of clothing and a pair of shoes recovered from Evans's home were linked to the Family Dollar robbery. (Tr. 533.)

{¶ 12} Based on the evidence seized from his residence, Evans was interviewed by Det. Cramer about his involvement in the string of robberies. Relevant to this appeal, Det. Cramer testified that Evans admitted to participating in the CVS robbery. Evans confirmed that he was the suspect wearing a green-hooded sweatshirt by signing his name on a still image taken from the surveillance footage of the CVS robbery.

{¶ 13} Regarding his specific actions during the CVS robbery, Evans admitted that he took a cell phone from the CVS security guard and subsequently took the pharmacist's wallet and cell phone. Evans indicated that he and Young

"dump[ed]" the stolen cell phones in a back yard as they fled the scene. (Tr. 533.) Based on this information, the cell phones were recovered by officers several days after Evans's interview. Det. Cramer testified that Evans further acknowledged that he used "a glock" during the CVS robbery, and that he subsequently sold the firearm to an unknown individual for $250. (Tr. 531.)

{¶ 14} Finally, Det. Cramer testified that he questioned Evans about the circumstances of his arrest on October 9, 2018. In relevant part, Evans admitted that he "ditched the firearm" that was recovered by detectives in the bushes. (Tr. 535.)

{¶ 15} Codefendant Young testified on behalf of the state pursuant to the terms of his plea agreement. He admitted to participating in the CVS robbery with Evans and codefendant Stewart. Young stated that he and Evans were "brothers" and grew up together in the same neighborhood. On October 4, 2018, Young received a phone call from Evans, who urged Young to come to his house. When Young arrived at Evans's house, he was told that Stewart had orchestrated a plan for Young and Evans to obtain a gun and complete a robbery at a pharmacy. Young stated that he, Evans, and Stewart then left the house to obtain a gun from an unidentified location. Once Evans was in possession of a gun, Stewart drove Evans and Young to the CVS store. Young testified that he and Evans then went inside the CVS store while Stewart remained in the vehicle.

{¶ 16} During his testimony, Young reluctantly described the events of the robbery as they unfolded on the surveillance video footage. Young confirmed that

he was the individual wearing a black-hooded sweatshirt. While Young declined to identify Evans as the second suspect depicted in the video, he previously confirmed that Evans was wearing a "green pullover" on the night of the CVS robbery. (Tr. 397.) Young testified that he was not in possession of a firearm and that his role in the robbery was to be the lookout. Young explained that Stewart advised them to take cash from the store registers and to go into the pharmacy if they had time. Young testified that they were unable to get cash from the store registers, but did take cell phones from female customers. After Young and Evans left the CVS store, they ran to Evans's home, which was located nearby.

{¶ 17} Sergeant Christopher Mobley ("Sgt. Mobley"), of the Cleveland Police Department, testified that he used a software extraction program to retrieve information from Evans's cell phone. Sgt. Mobley testified that he recovered a text message that was sent to Evans's phone on October 3, 2019, which read, "You think we will actually get it for a whole night so we can go on a robbing spree?" The text message was sent from a phone number associated with codefendant Stewart. Sgt. Mobley testified that he also extracted several images from Evans's cell phone. The images were taken on October 1, 2018, and October 4, 2018. Sgt. Mobley described the individual in the images as "an African American male wearing an olive green hoodie." (Tr. 381.)

{¶ 18} At the close of the state's case, the charges relating to Evans's alleged participation in the Dollar General robbery were dismissed. (Counts 1 and 2). Thereafter, defense counsel moved for a judgment of acquittal on the remaining

counts pursuant to Crim.R. 29. The trial court denied defense counsel's motion, and the defense rested without presenting its own witnesses. Defense counsel then renewed the Crim.R. 29 motion, which the trial court denied.

{¶ 19} At the conclusion of the trial, the jury found Evans not guilty of the charges relating to the Family Dollar robbery. (Counts 3 and 4.) The jury also found Evans not guilty of Count 9, which pertained to the aggravated robbery charge involving the CVS-robbery victim, D.B. In addition, while the jury found Evans guilty of robbery as charged in Count 10 of the indictment, the firearm specifications attached to the offense were answered in the negative. (Tr. 682.) Evans was found guilty of all remaining counts and specifications.

{¶ 20} At the sentencing hearing, the trial court determined that the aggravated robbery and robbery offenses charged in Counts 5 and 6 were allied offense of similar import. (Tr. 695; 699.) In addition, the court found that the aggravated robbery and robbery offenses charged in Counts 12 and 13 were allied offenses of similar import. (Tr. 699.) The state elected to pursue with sentencing on the aggravated robbery offenses.

{¶ 21} Following a discussion on the record, the trial court sentenced Evans to 11 years in prison on the aggravated robbery offense charged in Count 5, to run consecutively with the attached three-year firearm specification; six years in prison on the felonious assault offense charged in Count 7, to run consecutively with the attached three-year firearm specification; six months in prison on the theft offense charged in Count 8; two years in prison on the robbery offense charged in Count 10;

six months in prison on the theft offense charged in Count 11; six years in prison on the aggravated robbery offense charged in Count 12; six months in prison on the theft offense charged in Count 14; six months in prison on the theft offense charged in Count 15; 36 months in prison on the tampering with evidence offense charged in Count 16; 36 months in prison on the having weapons while under disability offense charged in Count 18; 18 months in prison on the carrying a concealed weapons offense charged in Count 19; 36 months in prison on the tampering with evidence offense charged in Count 20; and 12 months in prison on the receiving stolen property offense charged in Count 21.

{¶ 22} Upon consideration, the trial court determined that it was necessary to impose consecutive sentences. The court expressed that the aggregate 14-year prison term imposed on Count 5, the two-year prison term imposed on Count 10, and the six-year prison term imposed on Count 12, would run consecutively. (Tr. 714.) In addition, the trial court ordered the three-year firearm specification attached to Count 7 to run consecutively with the firearm specification attached to Count 5 pursuant to R.C. 2929.14(B)(1)(g).[1] (Tr. 712.) The remaining terms of imprisonment were ordered to run concurrently. At the conclusion of the sentencing hearing, the trial court inaccurately expressed that Evans's aggregate sentence was 23 years in prison, as opposed to the 25-year prison term imposed by the court on the record. (Tr. 718.)

---

[1] The trial court expressed that the three-year firearm specification attached to Count 12 would merge with the firearm specifications attached to Counts 5 and 7. (Tr. 713.)

{¶ 23} On May 8, 2019, the trial court issued a sentencing journal entry. Consistent with the court's statements during the sentencing hearing, the sentencing journal entry imposed an aggregate 25-year prison term, and expressed that the prison terms imposed on Counts 5, 10, and 12 were ordered to run consecutively pursuant to R.C. 2929.14(C)(4). However, in contrast to the statements made on the record, the sentencing entry mistakenly ran the firearm specification attached to Count 6, as opposed to the firearm specification attached to Count 7, consecutive to the three-year firearm specification attached to Count 5.[2] In addition, the sentencing journal entry mistakenly stated that Evans was found guilty of the firearm specifications attached to Count 10.

{¶ 24} On June 18, 2019, the trial court issued a nunc pro tunc journal entry to correct purported clerical errors. Once again, the corrected journal entry reflected an aggregate 25-year prison term. In the attempt to correct certain clerical errors, however, the journal entry omitted all references to the jury's verdict on Count 10.[3] In addition, the corrected journal entry specified that the three-year firearm specification attached to Count 5 would run "consecutive to all other counts," but that "all other gun specs [were] to be served concurrently." Thus, inconsistent with

---

[2] This was undoubtedly a clerical error because the trial court had merged Counts 5 and 6 for the purposes of sentencing.

[3] The original sentencing order complied with the substantive requirements of Crim.R. 32(C), was a final order for purposes of R.C. 2505.02, and was appealed by Evans. The omission of Count 10 in the nunc pro tunc order did not impair the jurisdiction of this court. Although the omission must be corrected by an additional nunc pro tunc entry, it will not constitute a new order from which a new appeal may be taken. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, syllabus.

R.C. 2929.14(B)(1)(g) and the court's statements on the record during the sentencing hearing, the corrected sentencing journal entry imposed a prison term on a single three-year firearm specification.

{¶ 25} Evans now appeals from his convictions and sentence.

## II. Law and Analysis

### A. Motion for Severance

{¶ 26} In his first assignment of error, Evans argues the trial court erred by failing to grant defense counsel's motion to sever Counts 18, 19, and 20 from the remaining charges. Counts 18, 19, and 20 stemmed from the events leading to Evans's arrest on October 9, 2018, including the discovery of a gun that was alleged to have been discarded by Evans before his detainment.

{¶ 27} Under Crim.R. 8(A), which governs the joinder of offenses, two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶ 28} The law favors joining multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38. If it appears, however, that the defendant would be prejudiced by the joinder, a trial court may grant a severance. Crim.R. 14; *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95. The defendant bears the burden

of proving prejudice and that the trial court abused its discretion in denying severance. *Diar* at ¶ 95.

{¶ 29} The state can refute a defendant's claim of prejudice by joinder of multiple offenses in two ways (1) a showing that the evidence of each crime is simple and direct, or (2) evidence of the other crimes would be admissible even if the counts were severed. *State v. Anderson*, 2017-Ohio-931, 86 N.E.3d 870, ¶ 25 (8th Dist.), citing *Lott* at 163. When the evidence is "simple and direct," an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B). *Lott* at 163. Thus, if the state can meet the requirements of the "joinder test," it need not meet the requirements of the stricter "other acts test." *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 66, citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

{¶ 30} "Simple and direct" evidence means that the evidence of each crime is "so clearly separate and distinct as to prevent the jury from considering evidence of [some crimes] as corroborative of the other." *State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 25, citing *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶ 48. Evidence is "simple and direct" if the trier of fact is capable of segregating the proof required for each offense. *Id.*, citing *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 39 (10th Dist.). "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims

without significant overlap or conflation of proof." *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 16, citing *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33.

{¶ 31} In this case, defense counsel filed a motion for relief from prejudicial joinder, arguing that Evans would "suffer unfair prejudice" and would be denied a fair trial if the counts associated with his October 9, 2018 arrest were tried together with the counts stemming from the alleged robberies. Following a discussion on the record, the court denied the motion to sever. (Tr. 19.)

{¶ 32} On appeal, Evans reiterates the arguments set forth in his pretrial motion. He contends that joinder of the offenses stemming from his arrest on October 9, 2018, resulted in unfair prejudice because it "depicted [him] to the jury as a person who handles firearms and is associated with gangs being under investigation or arrested by the gang unit."

{¶ 33} After careful consideration, we find no information in the record to suggest Evans was prejudiced by the joinder of offenses. Contrary to Evans's position, there is no indication that the evidence pertaining to his arrest on October 9, 2018, was confusing or improperly used to corroborate the charges stemming from the alleged robberies. The testimony regarding each incident was presented in an orderly fashion without significant overlap or conflation of proof. The convictions were premised on distinct evidence, including testimony from separate investigating detectives. In fact, the record establishes that the jury was sufficiently able to segregate the evidence regarding each offense, as evidenced by their finding

of not guilty on Counts 3, 4, and 9. *See State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, ¶ 19 (the evidence was "simple and direct" as reflected by the jury acquitting the defendant of offenses relating to one of the several shootings); *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 95 (8th Dist.) (defendant could not show prejudice from joinder as he was acquitted of one charge); *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 66-68 (8th Dist.) (defendant was unable to show prejudice for the court's refusal to sever his offenses because he was acquitted of some charges).

{¶ 34} Because the evidence supporting each offense was simple and direct, we find the trial court did not abuse its discretion in denying Evans's motion to sever. Evans's first assignment of error is overruled.

### B. Sufficiency of the Evidence

{¶ 35} In his second assignment of error, Evans argues the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29. He contends his convictions are not supported by sufficient evidence.

{¶ 36} Crim.R. 29(A) provides for an acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." A sufficiency challenge essentially argues that the evidence presented was inadequate to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). '"The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' *State v. Getsy,* 84 Ohio

St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 37} It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

{¶ 38} Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be "'more certain, satisfying and persuasive than direct evidence.'" *Lott*, 51 Ohio St.3d 160, at 167, 555 N.E.2d 293, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 39} In this case, Evans was convicted on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), with one- and three-year firearm specifications; two counts of robbery in violation of R.C. 2911.02(A)(2), with one- and three-year firearm specifications; one count of robbery in violation of R.C. 2911.02(A)(2), without firearm specifications; one count of felonious assault in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications; four counts of theft in violation of R.C. 2913.02(A)(1); two counts of tampering with evidence in violation of R.C. 2921.12(A)(1); one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2); one count of receiving stolen property in violation of R.C. 2913.51(A); and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2).

{¶ 40} We separately address the sufficiency of the evidence supporting each conviction and the attached firearm specifications.

### 1. Firearm Specifications (Counts 5, 6, 7, 12, and 13)

{¶ 41} We begin our analysis by addressing Evans's challenge to the evidence supporting his firearm specifications. The determination of whether Evans was in possession of a firearm during the CVS robbery on October 4, 2018, is relevant to our assessment of the underlying offenses.

{¶ 42} In this case, Evans was found guilty of the one-and three-year firearm specifications attached to the aggravated robbery, robbery, and felonious assault offenses charged in Counts 5, 6, 7, 12, and 13 of the indictment. On appeal, Evans argues the state did not present sufficient evidence to support the specifications

because "there was no firearm recovered from, or related to, the October 4, 2018, CVS robbery."

{¶ 43} R.C. 2941.141(A) governs the one-year firearm specification and requires the jury to find that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.145(A) governs the three-year firearm specification and requires the jury to find that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 44} A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). It includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable. *Id.*

{¶ 45} In *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court elaborated on the requisite proof to sustain a firearm specification:

> A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

*Id.* at paragraph one of the syllabus.

{¶ 46} "Thus, with respect to operability of a firearm in cases where no shots are fired and the firearm is not recovered, circumstantial evidence, such as the representations and actions of the gun operator, are of crucial importance." *State v. Lavette*, 8th Dist. Cuyahoga No. 106169, 2019-Ohio-145, ¶ 57, citing *State v. Fulton*, 8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259, ¶ 34; *State v. Ware,* 9th Dist. Summit No. 22919, 2006-Ohio-2693, ¶ 13.

{¶ 47} In this case, Daloisio testified that an individual with a gun entered the CVS store and ordered him to hand over his wallet and cell phone. The suspect then ordered Daloisio to open the narcotics safe at gunpoint. When Daloisio was unable to comply with the suspect's demands, the suspect struck Daloisio's head with his gun. The incident was captured by the store's surveillance cameras. The surveillance footage depicts an individual, wearing a greed-hooded sweatshirt, enter the CVS store and immediately remove a gun from his pocket. The suspect in the green-hooded sweatshirt is seen pointing a gun at the store's security guard and Daloisio during the robbery. Once in police custody, Evans admitted his involvement in the CVS robbery. He identified himself as the suspect wearing the green-hooded sweatshirt, and signed a still image of him entering the CVS store on October 4, 2018. Det. Cramer testified that Evans further acknowledged that the gun he used during the CVS robbery was "a Glock."

{¶ 48} Based upon these facts, we find the firearm specifications were supported by sufficient evidence. Unquestionably, Evans facilitated the underlying offenses while brandishing a gun in a threatening manner. As recognized by this

court, "[t]he implicit threat while brandishing the gun so as to threaten [the victims] is sufficient to establish its operability." *See State v. Cummings*, 8th Dist. Cuyahoga No. 106458, 2018-Ohio-4214, ¶ 22 (finding sufficient evidence supporting firearm specification where the defendant ordered the victim to empty his pockets while pointing a gun at the victim's chest). Accordingly, we find that Evans possessed, displayed, and brandished a firearm while committing the offenses pursuant to R.C. 2941.145(A). We also find that Evans had a firearm on his person and under his control while committing the offenses pursuant to R.C. 2941.141(A).

{¶ 49} While Evans notes that neither "D.B. nor her mother claimed to have seen a gun or weapon," we reiterate that Evans was found not guilty of the firearm specifications attached to offenses pertaining to D.B. Moreover, while Young did not expressly state that Evans possessed a firearm during the robbery, he described Evans's acquisition of a firearm on the night of the robbery, and corroborated Det. Cramer's testimony that Evans was the individual wearing the green-hooded sweatshirt in the surveillance video.

### 2. Theft (Counts 8, 11, 14, and 15)

{¶ 50} Counts 8, 11, 14, and 15 charged Evans with theft in violation of R.C. 2913.02(A)(1). The charges stemmed from separate acts committed against Daloisio, D.B., and Watkins during the CVS robbery on October 4, 2018.

{¶ 51} A theft occurs when any person, "with purpose to deprive the owner of property or services, * * * knowingly obtain[s] or exert[s] control over either the

property or services" without consent, or beyond the scope of consent, or by deception, threat, or intimidation. R.C. 2913.02(A)(1).

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

R.C. 2901.22(A).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

R.C. 2901.22(B).

{¶ 52} "'Deprive' means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

{¶ 53} Ohio's complicity statute provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2).

{¶ 54} To support a conviction for complicity by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 754 N.E.2d 796 (2001). Aiding and abetting may be inferred from the circumstances surrounding the crime, including "presence, companionship, and conduct before and after the offense is committed." *Id.* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). *See also State v. Sanders*, 8th Dist. Cuyahoga No. 106744, 2018-Ohio-4603, ¶ 11. When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender. R.C. 2923.03(F).

{¶ 55} In this case, the indictment alleged that Evans purposefully deprived the victims of their property without their consent. Specifically, the indictment alleged that Evans knowingly obtained and/or exerted control over (1) Daloisio's "cell phone and/or wallet and/or wallet contents" (COunt 8), (2) Daloisio's credit cards or services (Count 15), (3) D.B.'s cell phone or services (Count 11), and (4) Watkins's cell phone or services (Count 14).

{¶ 56} Viewing the evidence in the light most favorable to the state, we find a rational trier of fact could have found the theft offenses proven beyond a reasonable doubt. In this case, the evidence presented at trial established that Evans and Young entered the CVS store together and purposefully deprived Daloisio, D.B.,

and Watkins of their personal property. The subject property was obtained in a threatening manner, establishing the lack of consent, and the perpetrators fled the store with possession of the subject property, thereby demonstrating their intent to permanently withhold the property from each victim. Det. Cramer testified that Evans admitted his role in the CVS robbery and identified himself as the individual wearing a green-hooded sweatshirt during the incident.

{¶ 57} While Evans did not directly deprive D.B. of her personal property, the jury could reasonably conclude that Evans aided and abetted Young in the commission of the crime.[4] Young's testimony established that he and Evans entered the CVS store together, with a shared criminal intent. Under these circumstances, we find a reasonable factfinder could infer that Evans "supported, assisted, encouraged, cooperated with, advised, or incited [Young] in the commission of the crime" against D.B.

{¶ 58} Finally, although Evans notes that Watkins did not testify at trial, Det. Cramer testified that Evans admitted that he took a cell phone from the store's security guard during the CVS robbery. Det. Cramer explained that the police report identified Watkins as the security guard Evans was referring to during his interview. Furthermore, Watkins's personal property was discovered inside Evans's home during the subsequent investigation.

---

[4] Evans does not dispute the jury's determination that he was complicit in the acts committed against D.B. by codefendant Young. *See* R.C. 2923.03(F).

{¶ 59} Based on the foregoing, we find the state presented sufficient evidence that Evans committed the theft offenses against Daloisio and Watkins, and was complicit in the theft offense committed against D.B.

### 3. Aggravated Robbery (Counts 5 and 12)

{¶ 60} Evans's aggravated robbery convictions stem from acts committed against Daloisio and Watkins on October 4, 2018. R.C. 2911.01(A)(1) states, in relevant part:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

{¶ 61} Pursuant to R.C. 2913.02(A)(1), a "theft offense" includes a violation of R.C. 2913.02(A)(1), as charged in Counts 8, 14, and 15.

{¶ 62} The term "deadly weapon" is defined by R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." *See* R.C. 2911.01(D)(1). "Proof of the existence of a deadly weapon does not require that the state actually come into possession of the weapon — the fact required to be proved may be inferred from other evidence." *State v. Smith*, 8th Dist. Cuyahoga No. 107899, 2019-Ohio-4671, ¶ 15, quoting *State v. Hawkins*, 8th Dist. Cuyahoga No. 53026, 1987 Ohio App. LEXIS 9612, *5 (Nov. 12, 1987), citing *State v. Boyce*, 21 Ohio App.3d 153, 154, 486 N.E.2d 1246 (10th Dist. 1985).

{¶ 63} For the reasons previously discussed, we find Evans's aggravated robbery convictions are supported by sufficient evidence. At trial, codefendant Young described the events leading up to the commission of the CVS robbery, including Evans's successful acquisition of a firearm from an unidentified person on the night of the robbery. Once inside the CVS store, Evans brandished the firearm and, ultimately, took possession of Daloisio and Watkins's personal property. As stated, the manner in which Evans used the firearm during the commission of the underlying theft offenses supported an inference that the firearm was operable. Daloisio testified that he observed the gun in Evans's possession, and Evans is observed pointing a gun directly at Daloisio and Watkins on the surveillance video footage. While Watkins did not testify at trial, Evans confessed to taking the security guard's cell phone, and further admitted that he committed the CVS robbery while in possession of "a Glock."

{¶ 64} Viewing this evidence in a light most favorable to the state, we find the essential elements of the aggravated robbery offenses were proven beyond a reasonable doubt.

### 4. Robbery (Counts 6, 10, and 13)

{¶ 65} Evans was also convicted on three counts of robbery in violation of R.C. 2911.02(A)(2). Counts 6, 10, and 13 correlated to acts committed against Daloisio, Watkins, and D.B. In order to substantiate each robbery charge in this case, the state was required to demonstrate beyond a reasonable doubt that Evans "in attempting or committing a theft offense or in fleeing immediately after the

attempt or offense, * * * [i]nflicted, attempted to inflict, or threatened to inflict physical harm on another." R.C. 2911.02(A)(2). The term "physical harm" includes "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 66} An implied threat of physical harm is sufficient to support a conviction under R.C. 2911.02(A)(2). Regarding the circumstances presented in this case, the Ohio Supreme Court has recognized that:

> One cannot display, brandish, indicate possession of, or use a deadly weapon in the context of committing a theft offense without conveying an implied threat to inflict physical harm. It is the very act of displaying, brandishing, indicating possession, or using the weapon that constitutes the threat to inflict harm because it intimidates the victim into complying with the command to relinquish property without consent.

*State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 23.

{¶ 67} On appeal, Evans restates that his robbery conviction relating to Watkins is not supported by sufficient evidence because Watkins did not testify at trial. He makes no specific arguments regarding the robbery offense committed against D.B. or Daloisio.

{¶ 68} After careful review, we find Evans's robbery convictions are supported by sufficient evidence. As discussed, the state presented sufficient evidence that Evans committed the underlying theft offenses against Daloisio, Watkins, and D.B., by depriving them of their personal property without their consent. In effectuating the offenses against Daloisio and Watkins, Evans brandished a firearm, thereby conveying an implicit threat of physical harm. In addition, the record reflects that codefendant Young took possession of D.B.'s cell

phone and expressly threatened to shoot her. Thus, "in attempting or committing a theft offense or in fleeing immediately after the attempt or offense," Young did threaten to inflict physical harm on another. Certainly, the evidence in this case established that Evans was complicit in Young's commission of the robbery offense against D.B.

{¶ 69} Viewing this evidence in a light most favorable to the state, we find the essential elements of the robbery offenses were proven beyond a reasonable doubt.

### 5. Felonious Assault (Count 7)

{¶ 70} Evans was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The offense correlated to the acts committed against Daloisio.

{¶ 71} A firearm that is used as a bludgeon constitutes a deadly weapon. *State v. Jackson*, 92 Ohio St.3d 436, 440, 751 N.E.2d 946 (2001). In *Jackson*, the Ohio Supreme Court held that testimony that the defendant had struck the victim over the head with his handgun, causing her to fall to her knees bleeding, was sufficient to establish "the essential elements of the crime of felonious assault under R.C. 2903.11(A)(2) in that a firearm used as a bludgeon is 'capable of inflicting death.'" *Id.*, quoting *State v. Gaines*, 46 Ohio St.3d 65, 68, 545 N.E.2d 68 (1989). *See, e.g., State v. Keil*, 5th Dist. Richland No. 16CA28, 2017-Ohio-593, ¶ 33-35

(defendant committed felonious assault when he hit victim in the head with a handgun, causing a laceration).

{¶ 72} In this case, Daloisio testified that the suspect struck him on the head with a gun, causing Daloisio to bleed from his head. The perpetrator, who was wearing a green-hooded sweatshirt, was later identified as Evans. The incident was captured by the store's surveillance cameras. Viewed in a light most favorable to the state, this evidence was sufficient to establish that Evans feloniously assaulted Daloisio in violation of R.C. 2903.11(A)(2).

### 6. Tampering with Evidence (Counts 16 and 20)

{¶ 73} Tampering with evidence is defined in R.C. 2921.12(A)(1), which states:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

{¶ 74} The Ohio Supreme Court has explained that there are three elements to the tampering with evidence offense:

> (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, [and] (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation.

*State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶ 75} R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *State v. Skorvanek*,

182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 21 (9th Dist.). When determining whether the defendant acted purposely, a defendant's state of mind may be inferred from the surrounding circumstances. *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786. Therefore, the state must demonstrate that the defendant knew that an investigation was likely at the time of concealing the evidence. Knowledge that a criminal investigation is imminent is based upon a reasonable person standard. *State v. Workman*, 2015-Ohio-5049, 52 N.E.3d 286, ¶ 51 (3d Dist.).

{¶ 76} In this case, Counts 16 and 20 alleged that Evans violated R.C. 2921.12(A)(1) by tampering with (1) the cell phones taken during the CVS robbery on October 4, 2018, and (2) the firearm recovered in the bushes at the time of his arrest on October 9, 2018. On appeal, Evans argues that the state failed to "prove that any cell phones were destroyed, concealed or removed to impair their value or availability as evidence in a proceeding or investigation." Similarly, Evans contends that there is no evidence that the firearm recovered at the time of his arrest was "placed in the bushes to tamper with it as evidence." We find no merit to Evans's position.

{¶ 77} Regarding the CVS robbery, Det. Cramer testified that he responded to a radio broadcast and arrived at the scene of the robbery as it was ongoing. As the police entered the store, however, Evans and Young fled through the back of the building. Evans and Young ran into a neighborhood located behind the CVS and "jump[ed] a few fences." At that time, Evans "dumped" the cell phones in a back

yard as he ran. Det. Cramer explained that the police knew this based on information gathered from Evans and Young during the subsequent police investigation. The information provided by Evans and Young allowed the police to recover the tossed cell phones several days later.

{¶ 78} With respect to the discovery of a firearm on October 9, 2018, Det. Detrick was patrolling a high crime area when his sergeant reported observing an individual, later identified as Evans, who was "showing characteristics" of being armed. Det. Detrick testified that when he located the individual believed to be carrying a firearm, he shined his flash light on the individual for further observation. At that time, the individual turned the corner and walked "behind some bushes between two properties." (Tr. 440.) Det. Detrick testified that the individual was eventually detained for further investigation in the front yard of a nearby property. When the detectives "searched the area in the bushes where [they] lost sight of the male * * * [they] found a gun in the bushes." (Tr. *id.*) Det. Detrick noted that the firearm was dry. He explained that this was significant because "it had rained the night before and earlier in the day, and the gun was dry — so it wasn't like it had been there for a while." Finally, Det. Cramer confirmed that Evans had admitted during his interview "that he had, in fact, ditched the firearm that was recovered by [the] detectives." (Tr. 535.)

{¶ 79} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that a reasonable person in Evans's position would have known that an official

investigation was in progress or likely to be instituted at the time he tossed the cell phones on October 4, 2018, and the firearm on October 9, 2018. The police were dispatched to the scene of the CVS robbery as the incident was ongoing, and Det. Cramer testified that the store's security alarm was "going off very loudly" as Evans and Young fled through the back of the building. Under these circumstances, it was reasonable to infer that the defendants understood there was a strong likelihood that the police would arrive to investigate the robbery. Similarly, the evidence established that on October 9, 2018, Evans changed his course of direction, and walked directly behind nearby bushes once the detectives shined a flashlight on him. Under these circumstances, it was reasonable for the trier of fact to conclude that Evans immediately walked behind the bushes, where the firearm was recovered, because he understood that an investigative stop was likely to be initiated.

{¶ 80} We further find a rational trier of fact could have found proven beyond a reasonable doubt that Evans concealed the subject property with the specific intention of impairing its availability as evidence in the investigation. For purposes of R.C. 2921.12(A)(1), "[a] defendant's act of removing contraband from his or her person can constitute concealment or removal if done to avoid discovery." *State v. Straley*, 2d Dist. Clark No. 2012-CA-34, 2013-Ohio-510, ¶ 9, citing *State v. Colquitt*, 2d Dist. Clark No. 98-CA-71, 1999 Ohio App. LEXIS 4436, *5 (Sept. 24, 1999). Moreover, circumstantial evidence can be relied on to establish that a defendant has purposely impaired the availability of evidence. *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 28.

{¶ 81} Here, Evans's specific intent to conceal the cell phone for the purpose of impairing its availability can be inferred from his act of intentionally dumping the stolen cell phone in a backyard as he fled the scene of the robbery. The stolen property was removed from Evans's person and discarded in an area where it likely would not have been discovered during the police investigation into the CVS robbery, had Evans not informed the detectives of its location.

{¶ 82} As discussed further below, the state also presented sufficient circumstantial evidence that Evans was responsible for the discarded firearm that was discovered in the bushes. His specific intent to conceal the firearm for the purpose of impairing its availability can be inferred from his act of willingly removing the firearm from his person and tossing it in nearby bushes as the police approached him. In an effort to prevent its discovery, the firearm was placed in an area so "as not to be discernible by ordinary observation by those near enough to see it if it were not concealed." *See State v. Davis*, 15 Ohio App.3d 64, 64-65, 472 N.E.2d 751 (1st Dist.1984), quoting *State v. Pettit*, 20 Ohio App.2d 170, 173-174, 252 N.E.2d 325 (4th Dist.1969). *See also State v. Simes*, 8th Dist. Cuyahoga No. 103672, 2016-Ohio-7300 (upholding a tampering with evidence conviction where the defendant concealed or removed the knife by taking it outside of the residence and throwing it in the bushes with the purpose of impairing its availability in the investigation).

{¶ 83} Based on the foregoing, we find Evans's tampering with evidence convictions were supported by sufficient evidence.

## 7. Carrying a Concealed Weapon (Count 19)

{¶ 84} Evans was convicted for committing one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: [a] handgun other than a dangerous ordnance." In order for a weapon to be concealed it must be "so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed." *State v. Davis*, 15 Ohio App.3d 64, 64-65, 472 N.E.2d 751 (1st Dist.1984).

{¶ 85} In challenging the evidence supporting his conviction, Evans contends that there is no physical evidence linking him to the firearm discovered by the arresting detectives. Evans further notes that the firearm was not found "on his person or ready at hand."

{¶ 86} We find no merit to Evans's argument. As stated, Det. Detrick testified that he and his partner approached Evans based on their observations and belief that Evans was carrying a firearm in his waistband. Det. Detrick could not observe a firearm, but explained that Evans was exhibiting signs of a person possibly carrying a firearm. Ultimately, the detectives detained Evans "for further investigation" and searched the area in the bushes where they lost sight of Evans. At that time, a discarded firearm was discovered in the bushes. Det. Detrick estimated that the firearm had not been in the bushes very long because the firearm was dry despite the rainy weather. We agree that the prosecution did not present physical evidence directly linking Evans to the firearm. As stated, however, Evans admitted

to Det. Cramer that he had "ditched" the firearm recovered by the detectives on October 9, 2018.

{¶ 87} Collectively, we find the state presented sufficient circumstantial evidence that Evans had a handgun concealed on his person. Because Det. Detrick could not see the handgun at the time he shined his flashlight on Evans, the jury could reasonably infer that Evans had the weapon concealed on or about his person before walking to the location where the weapon was carefully discarded and soon after discovered. *See, e.g., State v. Crossley*, 2d Dist. Clark No. 2015-CA-60, 2016-Ohio-3196, ¶ 17 (affirming the defendant's carrying a concealed weapon conviction).

### 8. Receiving Stolen Property (Count 21)

{¶ 88} Evans was convicted of receiving stolen property in violation of R.C. 2913.51(A), which provides:

> No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

{¶ 89} The charge stemmed from the discovery of Daloisio's credit cards and wallet inside Evans's home during the execution of the search warrant. On appeal, Evans argues there was insufficient evidence to support the receiving stolen property conviction because Evans "did not receive the property of Daloisio." Rather, "he is accused of taking [the property of Daloisio]." He further suggests that the property was in codefendant Stewart's possession at the time it was discovered.

{¶ 90} After careful consideration, we find Evans's reliance on the "receiving" portion of the statute to be misplaced. R.C. 2913.51(A) explicitly

prohibits a person from not only receiving stolen property, but from retaining it.

"Retain" is defined as "to continue to hold, have, use, recognize, etc., and to keep."

*State v. Steward*, 4th Dist. Washington No. 02CA43, 2003-Ohio-4082, ¶ 10.

Regarding this element of the offense, this court has explained that:

> Possession of stolen property for purpose of the receiving stolen property statute may be constructive as well as actual.  Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.  *Knowledge of illegal goods on one's property is sufficient to show constructive possession.*

(Emphasis added.)  *In re S.C.,* 8th Dist. Cuyahoga No. 100396, 2014-Ohio-3905,

¶ 19, citing *State v. Hankerson*, 70 Ohio St.2d 87, 90, 434 N.E.2d 1362 (1982),

syllabus.

{¶ 91} In this case, the inventory list completed at the time the search warrant was executed at Evans's home reflects that a "brown leather wallet containing the [social security] card for Michael Daloisio" and a "black leather wallet containing miscellaneous cards [belonging] to Michael Daloisio and Samuel Watkins" were discovered in a room designated "Room No. 6."  State's exhibit No. 132.  Det. Gonzalez and Det. Cramer each testified that Room No. 6 correlated to a "hallway closet" located inside the home.  (Tr. 504; 545.)

{¶ 92} Under these circumstances, we find a reasonable juror could infer that Evans had constructive possession of the stolen items at the time the search warrant was executed in November 2018.  The wallet and credit cards were located in an area of the home that was readily accessible to Evans.  In addition, the evidence

demonstrated that Evans understood the illegal goods were on his property, as he personally brought the stolen items into his home after fleeing the CVS store. Evans's retention of the property, with knowledge that it was obtained through commission of a theft offense, constituted a violation of R.C. 2913.51(A). Testimony that codefendant Stewart attempted to use the stolen credit cards to purchase items at a gun store does not diminish our conclusion that Evans was in constructive possession of the items discovered inside the hallway closet. Accordingly, we find Evans's receiving stolen property conviction was supported by sufficient evidence.

### 9. Having Weapons While Under Disability (Count 18)

{¶ 93} Evans was convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2), which provides:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> * * *
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶ 94} Evans does not raise an argument concerning the sufficiency of the evidence supporting his weapons disability conviction. However, we reiterate that Evans admitted to Det. Cramer that he discarded the firearm recovered by the detectives on October 9, 2018. In order to discard the firearm, Evans inherently had

possession of a firearm while under disability.[5]  Accordingly, we find Evans's having weapons while under disability conviction was supported by sufficient evidence.

{¶ 95} Based on the foregoing, we find the trial court did not err in denying defense counsel's Crim.R. 29 motion for acquittal.  Evans's second assignment of error is overruled.

### C.  Manifest Weight of the Evidence

{¶ 96} In his third assignment of error, Evans argues his convictions are against the manifest weight of the evidence.  Evans reiterates the arguments raised in his challenge to the sufficiency of the evidence, and suggests that the state failed to present credible evidence linking him to the CVS robbery and the firearm discovered by detectives on October 9, 2018.

{¶ 97} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12.  A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d 380, at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  A conviction should be reversed as against

---

[5]  Defense counsel stipulated to the authenticity of the certified records of Evans's juvenile adjudication for domestic violence which, if committed by an adult, would have been an offense of violence.

the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 98} After careful review of the record, weighing the strength and credibility of the evidence presented and the inferences to be reasonably drawn therefrom, we find Evans's convictions are not against the manifest weight of the evidence. Contrary to Evans's position on appeal, the trier of fact was presented ample evidence that established Evans's active participation in the CVS robbery on October 4, 2018, and his possession of the firearm discovered on October 9, 2018. Significantly, Evans admitted that he participated in the CVS robbery, identified himself as the perpetrator wearing the green-hooded sweatshirt in a still image taken from the surveillance video, and confirmed that he ditched a handgun in bushes just prior to being detained by patrolling detectives. The state further presented the testimony of codefendant Young, who described Evans's actions prior to the robbery, verified that Evans obtained a firearm to complete the robbery, confirmed that Evans was wearing a green-hooded sweatshirt on the night of the incident, and stated that he and Evans entered the CVS together with criminal intent. Young's testimony was corroborated by the surveillance video footage, which captured Evans brandish a firearm and point it at store employee's during the commission of the offenses. Finally, the state presented an itemized inventory list of the evidence recovered from Evans's home during the police investigation, including clothing that was believed to be worn by the suspects during the CVS robbery, and the personal property of Daloisio and Watkins.

{¶ 99} Under the foregoing circumstances, we are unable to conclude that the jury lost its way and created such a manifest miscarriage of justice that a new trial should be ordered. Evans's third assignment of error is overruled.

### D. Other-Acts Evidence

{¶ 100} In his fourth assignment of error, Evans argues the trial court committed reversible error by admitting evidence in violation of Evid.R. 403 and 404(B).

{¶ 101} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

{¶ 102} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In general, "[e]vidence that [a defendant] committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. However, evidence of other crimes, wrongs, or acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶ 103} To determine whether other acts evidence is admissible, the court conducts a three step analysis (1) the court considers whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence (Evid.R. 401); (2) the court considers whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B); and (3) finally, the court considers whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *Williams* at ¶ 20.

{¶ 104} Similar to Evid.R. 404(B), the General Assembly has promulgated R.C. 2945.59, which provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 105} Both the statute and the rule "codify the common law with respect to evidence of other acts of wrongdoing," and "preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait." *Williams* at ¶ 16.

**{¶ 106}** In this case, defense counsel sought to exclude a text message purportedly sent from codefendant Stewart to Evans's cell phone on October 3, 2018. (Tr. 368.) The text message stated, "You think we will actually get it for the whole night so we can go on a robbing spree." In addition, defense counsel sought to exclude certain images that were recovered from Evans's cell phone during the police investigation into the October 4, 2018 CVS robbery. (Tr. *id.*) Defense counsel maintained that the evidence was not permitted under Evid.R. 404(B) and, alternatively, "should be excluded under Evid.R. 403," as "its probative value is substantially outweighed by the danger of unfair prejudice." (Tr. *id.*) Following a discussion on the record, the trial court permitted the state to introduce the text message and the images depicting Evans wearing a sweatshirt. However, the images of Evans in possession of a firearm were excluded. (Tr. 371.)

**{¶ 107}** On appeal, Evans argues the trial court abused its discretion by permitting the state to introduce the disputed evidence in violation of the Ohio Rules of Evidence. Evans contends the "isolated text [message], without further context, is too speculative to merit admission pursuant to Evid.R. 403 and the danger of unfair prejudice is obvious." Evans further suggests "the photos of Evans wearing a particular sweatshirt are not probative of whether he was the individual seen on the CVS [surveillance] videos."

**{¶ 108}** Relevant to the arguments posed by Evans, this court has stated as follows:

Evid.R. 404(B) only applies to limit the admission of so-called "other acts" evidence that is "extrinsic" to the crime charged. *State v. Stallworth*, 11th Dist. Lake No. 2013-L-122, 2014-Ohio-4297, ¶ 37. In other words, "Evid.R. 404(B) does not apply when the acts are intrinsic as opposed to extrinsic, i.e., the acts are part of the events in question or form part of the immediate background of the alleged act which forms the basis for the crime charged." *State v. Crew*, 2d Dist. Clark No. 2009 CA 45, 2010-Ohio-3110, ¶ 99. Thus, "evidence of other crimes or wrongs may be admitted when such acts are so inextricably intertwined with the crime as charged that proof of one involves the other, explains the circumstances thereof, or tends logically to prove any element of the crime charged." *State v. Davis*, 64 Ohio App.3d 334, 341, 581 N.E.2d 604 (12th Dist.1989), citing *State v. Wilkinson*, 64 Ohio St.2d 308, 415 N.E.2d 261 (1980); *State v. Long,* 64 Ohio App.3d 615, 582 N.E.2d 626 (9th Dist.1989).

*State v. Jones*, 8th Dist. Cuyahoga Nos. 103290 and 103302, 2018-Ohio-498, ¶ 140.

{¶ 109} After careful consideration, we are unable to conclude that the trial court abused its discretion by permitting the state to introduce the challenged evidence. In our view, the test message and images recovered from Evans's phone do not constitute prohibited other acts evidence, as contemplated under Evid.R. 404(B) or R.C. 2945.59. Rather, the evidence was inextricably intertwined with the current charges and was relevant to the state's theory of the case. As expressed by the state, the text message conversation between Evans and codefendant Stewart provided the trier of fact with insight into their plan to commit a series of robberies. Contrary to Evans's position, we do not find the text message to be speculative because it unambiguously expresses the defendants' intent to conduct a "robbing spree" the day before the CVS robbery occurred. In addition, we find the images of Evans wearing a sweatshirt that matched the clothing worn by one of the suspects

during the CVS robbery, was relevant evidence that tended to logically support Evans's identity and participation in the robbery.

{¶ 110} Accordingly, we find the evidence was properly admitted in order to describe the events that formed the immediate background of the crimes for which Evans was charged. Evans's fourth assignment of error is overruled.

### E. Allied Offenses of Similar Import

{¶ 111} In his fifth assignment of error, Evans argues the trial court erred by failing to merge all allied offenses of similar import, and by imposing separate sentences for allied offenses which violated Evans's state and federal rights to due process and protections against double jeopardy.

{¶ 112} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7. But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶ 113} In Ohio, this constitutional protection is codified in R.C. 2941.25. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger,* 45 Ohio St.2d 238, 344 N.E.2d 133 (1976).

{¶ 114} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 115} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. In *Ruff*, the Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true (1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were

committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 116} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 117} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 118} In this case, the charges deriving from Evans's participation in the October 4, 2018, CVS robbery involved actions taken against three separate victims: Daloisio, Watkins, and D.B. On appeal, Evans does not dispute that offenses committed against separate victims are dissimilar in import. However, he argues that the multiple offenses committed against each victim were committed during "one continuing course of conduct that gave rise to all of these offenses that were not committed separately with any separate animus or motivations." For clarity, we individually address the conduct committed against each victim in this case.

**Michael Daloisio**

{¶ 119} The aggravated robbery, robbery, felonious assault, theft, and receiving stolen property offenses charged in Counts 5, 6, 7, 8, 15, and 21 each pertained to conduct committed against Daloisio. At the time of sentencing, the trial court merged the aggravated robbery offense charged in Count 5 with the robbery

offense charged in Count 6. The state elected to proceed with sentencing on the aggravated robbery offense. Here, Evans contends that the trial court erred by failing to merge the remaining offenses with Count 5 for the purposes of sentencing. He asserts that the aggravated robbery, felonious assault, theft, and receiving stolen property offenses "are not dissimilar" and "were all done at the same time with the same animus."

{¶ 120} We begin by addressing the theft offenses charged in Counts 8 and 15. While Count 8 refers to Daloisio in his capacity as a "CVS representative" and Count 15 refers to him in his individual capacity, the property involved in each count pertains to Daloisio's personal property. The indictment reflects that Count 8 related to Evans's purposeful deprivation of Daloisio's "cell phone and/or wallet and/or wallet contents or services" without his consent. In turn, Count 15 related to Evans's purposeful deprivation of Daloisio's "Target and/or Sears and/or Discover credit cards or services" without his consent. In this case, the evidence adduced at trial established that Daloisio's cell phone and wallet, which contained his credit cards, were taken by Evans at the same time and with the same purpose, i.e., to deprive Daloisio of his personal property. Absent additional testimony, there is no evidence that the taking of Daloisio's wallet, credit cards, and cell phone resulted in separate, identifiable harms. *State v. Skapik*, 2d Dist. Champaign No. 2015-CA-5, 2015-Ohio-4404, ¶ 13 (Finding the defendant could only be convicted and sentenced for only one theft offense in connection with the multiple items he stole from a vehicle.); *State v. Lewis*, 5th Dist. Richland No. 15 CA 106, 2016-Ohio-7002, ¶ 27

("*Ruff* does not require that we herein treat the theft of separate items from the same situs as separate and identifiable offenses."). Accordingly, we find the theft offenses involving Daloisio's personal property were allied offenses of similar import that were subject to merger.

{¶ 121} Similarly, we find the trial court erred in failing to merge the receiving stolen property offense charged in Count 21 with the theft offense charged in Count 15. Each offense involved the underlying deprivation of Daloisio's credit cards. This court has previously stated that receiving stolen property and theft of the same property are generally allied offenses of similar import that are committed with an identical animus during a single transaction. *State v. Mitchell,* 8th Dist. Cuyahoga No. 101542, 2015-Ohio-1146, ¶ 24, citing *State v. Austin,* 8th Dist. Cuyahoga No. 84142, 2004-Ohio-5736, ¶ 37. "Obviously, at the same time a thief steals property, the thief is generally in receipt of that property and knows that it was stolen." *Id.* In this case, the theft of Daloisio's credit cards was committed with the same animus as Evans's retention of the property in his home. Having stolen the personal property, Evans also "received" the property within the definition of R.C. 2913.51. *State v. Fannin*, 5th Dist. Delaware No. 10CAA030028, 2011-Ohio-3211, ¶ 108. Evans's conduct was committed with a single animus resulting in a single harm against a single victim. Accordingly, we find Counts 15 and 21 are allied offenses of similar import.

{¶ 122} We now address whether the theft offenses should have merged with the aggravated robbery offense charged in Count 5. As stated, Evans's

aggravated robbery conviction was premised on his use of a deadly weapon during his commission of a theft offense "upon Michael Daloisio (Representative of CVS)." There is no information in the indictment or the trial record to suggest this aggravated robbery offense related to a theft or attempted theft that was not charged in the indictment. Thus, the theft offenses relating to the deprivation of Daloisio's personal property (Counts 8 and 15) encompassed the same conduct that supported a necessary element of Evans's conviction for aggravated robbery under Count 5. *See State v. McLaughlin*, 5th Dist. Muskingum No. CT, 2017-0104, 2018-Ohio-2333, ¶ 22 ("The thefts were part and parcel to the conduct of appellant that formed the basis of his conviction for aggravated robbery."); *State v. Cook*, 8th Dist. Cuyahoga No. 95987, 2011-Ohio-5156, ¶ 40 ("Therefore, inherent in the aggravated robbery committed here is the act of theft."). Each offense was similar in import, and was committed with the same animus, against the same victim. Accordingly, we find the Counts 5, 8, and 15 were committed with the same conduct, and were therefore allied offenses of similar import.

{¶ 123} However, we find the felonious assault offense charged under Count 7 caused a separate and identifiable harm than the aggravated robbery offense charged under Count 5 — namely a significant injury to Daloisio's head. Accordingly, we find the two offenses are not allied offenses of similar import. *In re K.P.*, 1st Dist. Hamilton Nos. C-180037, C-180038, and C-180039, 2018-Ohio-4972, ¶ 9 ("Where the force used during a felonious assault was greater than was necessary

to effectuate an aggravated robbery, it demonstrates that the defendant acted with a specific intent to harm, separate from any animus to rob the victim.").

{¶ 124} Based on the foregoing, we find the theft offenses charged in Counts 8 and 15 are allied offenses of similar import. In addition, we find the aggravated robbery and theft offenses charged in Counts 5, 8, and 15 are allied offenses of similar import. We further find that the theft and receiving stolen property offenses charged in Counts 15 and 21 are allied offenses of similar import. Given the relationship of these offenses, the state may only elect to pursue a single sentence on Count 5, Count 8, Count 15, or Count 21. However, Evans's felonious assault conviction under Count 7 is not subject to merger.

### D.B.

{¶ 125} In this case, the robbery and theft offenses charged in Counts 10 and 11 each pertained to conduct committed against D.B. on October 4, 2018. As stated, Count 10 charged Evans with robbery in violation of R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." In turn, Evans's conviction for theft related to his purposeful deprivation of D.B.'s "cell phone or services" without her consent.

{¶ 126} Under the circumstances presented in this case, Evans's conviction for robbery under Count 10 was premised on the underlying theft offense charged

in Count 11.[6] As stated, the evidence adduced at trial demonstrated that codefendant Young threatened to shoot D.B. after he deprived her of her two cell phones. The threat to inflict physical harm was made in furtherance of a purpose to deprive D.B. of her property. Under these circumstances, we find the robbery and theft offenses were committed as part of the same course of conduct, with a single state of mind. In addition, we are unable to conclude that the offenses were dissimilar in import. Regarding these particular counts, Evans's conduct "victimized one person in a single event; thus the harm was not separate and distinct." *State v. Shelton*, 1st Dist. Hamilton No. C-170547, 2018-Ohio-3895, ¶ 53. Accordingly, we find Counts 10 and 11 are allied offenses of similar import. On remand, the state shall elect which offense to proceed with for the purposes of sentencing.

## Samuel Watkins

**{¶ 127}** The aggravated robbery, robbery, and theft offenses charged in Counts 12, 13, and 14 pertained to Watkins. The aggravated robbery offense, Count 12, and the robbery offense, Count 13, were merged by the trial court for the purposes of sentencing. On appeal, Evans argues the trial court erred by failing to merge the aggravated robbery offense charged in Count 12 with the theft offense charged in Count 14.

**{¶ 128}** For the reasons previously stated, we agree with Evans's assertion. In this case, the conduct supporting Evans's theft conviction under Count 14 was the

---

[6] Evans's convictions for each offense were premised on a theory of complicity that relied on the acts of codefendant Young during the CVS robbery.

same conduct supporting the theft element underlying Evans's conviction for aggravated robbery under Count 12. The firearm was brandished during the commission of the underlying theft offense against Watkins. Each offense was similar in import, and was committed with the same animus, against the same victim. Accordingly, we find Counts 12 and 14 are allied offenses of similar import. On remand, the state shall elect which offense to proceed with for the purposes of sentencing.

{¶ 129} Based on the forgoing, Evans's fifth assignment of error is sustained in part, overruled in part. The sentences imposed on Counts 5, 8, 10, 11, 12, 14, 15, and 21 are vacated.

## F. Consecutive Sentences

{¶ 130} In his sixth assignment of error, Evans argues the record does not support the trial court's imposition of consecutive sentences. Evans contends that "concurrent prison terms are adequate to accomplish the sentencing purposes and there is nothing to support a conclusion that 25 years [in prison] is necessary."

{¶ 131} In this case, the trial court ordered the prison terms imposed on Counts 5, 10, and 12 to run consecutively pursuant to R.C. 2929.14(C)(4). In addition, the trial court ordered the prison term imposed on the three-year firearm specifications attached to Counts 5 to run consecutively with the prison term imposed on the three-year firearm specification attached to Count 7. (Tr. 712.) *See* R.C. 2929.14(B)(1)(g). The firearm specifications were ordered to run prior and consecutive to the base sentences imposed on Counts 5, 10, and 12. (Tr. *id.*) All

other sentences were ordered to run concurrently.  This resulted in an aggregate 25-year prison term.

{¶ 132} Based on our resolution of Evans's fifth assignment of error, however, the sentences imposed on Counts 5, 8, 10, 11, 12, 14, 15, and 21 are vacated. As recognized by this court, the "consecutive manner in which a base sentence is to be served is vacated * * * if that underlying sentence is reversed or vacated upon appeal." *State v. Grayson*, 8th Dist. Cuyahoga No. 106578, 2019-Ohio-864, ¶ 25. Thus, whether the record supports the trial court's imposition of consecutive sentences on Counts 5, 10, and 12, pursuant to R.C. 2929.14(C)(4), is now moot. *State v. West*, 8th Dist. Cuyahoga Nos. 97391 and 97900, 2013-Ohio-96, ¶ 22. Moreover, until the state elects which allied offenses to pursue sentencing on during the resentencing hearing, it is premature to address the trial court's mandatory application of R.C. 2929.14(B)(1)(g) to the multiple firearm specifications, since the sentence imposed on Count 5 has been vacated. *See State v. Roper*, 9th Dist. Summit Nos. 26631 and 26632, 2013-Ohio-2176, ¶ 11 ("it is impermissible to sentence an offender for a specification when the underlying offense upon which the specification is predicated has merged with another allied offense.").

{¶ 133} Evans's sixth assignment of error is overruled as moot.

{¶ 134} Judgment affirmed in part, reversed in part.  The matter is remanded for a de novo resentencing hearing on the sentences that have been affected by our resolution of Evans's fifth assignment of error.  At the resentencing hearing, the state shall elect which offense or offenses to pursue for sentencing.  The

trial court must accept the state's selection, merge the offenses accordingly for the purposes of sentencing, and impose a sentence that is appropriate for the remaining offense or offenses. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 18. The appropriateness of consecutive sentences may be revisited once a sentence is imposed on the offenses elected by the state. *State v. Christian*, Slip Opinion No. 2020-Ohio-828, ¶ 29 ("[W]hen a portion of a defendant's sentence has been vacated on direct appeal, the trial court has the authority to resentence the defendant de novo on any counts for which the original sentence was vacated."). However, the sentences unaffected by our decision shall not be altered on remand.[7] As this court explained:

> It is well settled that although a remand for a new sentencing hearing anticipates a de novo sentencing, there are a number of limitations that inherently narrow the scope of that particular resentencing hearing. *Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, at ¶ 15. "[O]nly the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review" by the trial court. *Id.*, citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, paragraph three of the syllabus.

*Grayson*, 8th Dist. Cuyahoga No. 106578, 2019-Ohio-864, at ¶ 17. Accordingly, "any individual sentence unaffected by a remand is final, including the consecutive or concurrent manner in which that sentence is to be served." *Id.* at ¶ 28.

It is ordered that appellee and appellant share costs herein taxed.

---

[7] Evans raises no arguments regarding the sentences imposed on the counts that are unaffected by our resolution of the fifth assignment of error. *See Grayson* at ¶ 22.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for a limited resentencing hearing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR